SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
Transamerica Pyramid
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Attorneys for Plaintiff*
*MASTEROBJECTS, INC.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MASTEROBJECTS, INC., | Case No.  CV 12-680 JSC |
| Plaintiff, | **PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF** |
| v. | **[PATENT L.R. 4-5]** |
| EBAY, INC., | |
| Defendant. | |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION AND SUMMARY                                          1

II.    STATEMENT OF THE FACTS: MASTEROBJECTS' INVENTIONS AND
       PRODUCTS                                                         4

III.   THE LAW                                                          7

IV.    THE TERMS                                                        8

       A.    "Content Source(s)"                                       8

       B.    The Cache Terms                                          11

       C.    The Communication and Protocol Terms                     13

             1.    "Asynchronous connection"                          13

             2.    "Communication protocol"                           15

       D.    Session                                                  18

       E.    Server Object                                            21

       F.    "Client Object"                                          23

V.     CONCLUSION                                                      23

## TABLE OF AUTHORITIES

<u>Case</u>                                                                                                  <u>Page</u>

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
    659 F.3d 1121 (Fed. Cir. 2011)                                                      18

*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002)                                                      8

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008)                                                      7

*Kara Technology Inc. v. Stamps.com Inc.*,
    582 F.3d 1341 (Fed. Cir. 2009)                                                      7

*Liebel-Flarsheim Company v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)                                                       3

*MySpace, Inc. v. GraphOn Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012)                                                      8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (C.A. Fed. 2005)                                                      7

*Praxair, Inc. v. ATMI, Inc.*,
    543 F.3d 1306 (Fed. Cir. 2008)                                                      17

*Rambus, Inc. v. Infineon Techs. AG*,
    318 F.3d 1081 (Fed. Cir. 2003)                                                      18

*Thorner v. Sony Computer Entertainment LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)                                                      8

*Toshiba Corp. v. Imation Corp.*,
    F.3d 2012 WL 2087187 *10 (Fed. Cir. 2012)                                           8

*Trading Technologies International, Inc. v. eSpeed, Inc.*,
    595 F.3d 1340 (Fed. Cir. 2010)                                                      3, 7

*Voda v. Cordis Corp.*,
    536 F.3d 1311 (Fed. Cir. 2008)                                                      17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In accord with Rule 4-5 of the Patent Local Rules of the United States District Court for the Northern District of California, plaintiff MasterObjects, Inc. ("MasterObjects") respectfully submits this Opening Claim Construction Brief.

I.      **INTRODUCTION AND SUMMARY.**

In October 2008, eBay introduced a "more engaging, dynamic" search experience for users looking for specific products on eBay's massive website.  A critical part of this new search experience came with what eBay called "eBay Suggestions."  In contrast to traditional search, where the user types in a full query, hits submit, and then waits for the results, the new eBay technology both predicted completed queries and provided corresponding product search results even as the user typed, character-by-character.  This was "instant" search – real-time results as the user typed.  eBay Suggestions is now part of the core eBay search experience today.

To take an example, assume an eBay user were interested in buying the special "Planet of the Apes-Legacy Box Set."  (Seriously, this is a real product).  With eBay Suggest, the first letter typed in ("A") kicks out as a first result "Anthropologie," a clothing store.  By the second letter, "AP," "Apple" is the first query suggested, and the eBay site returns real-time results for the Apple iPhone 4S.  But since our user is not looking for an iPhone, the user types a third letter, to get to "APE."  This longer, more focused search query returns "Planet of the Apes" as the first suggested query, and also immediately displays information on the "Planet of the Apes-Legacy Box Set (DVD, 2006, 6-disc set)."  In a world where seconds matter, this instant search technology is faster and more accurate than the former type in full, hit submit, and await the full response loop.

In introducing "eBay Suggest," eBay was surfing a wave just building in 2008. Yahoo! had introduced similar "instant search" technology just prior (and filed a bevy of

patents on that technology), and Google followed eBay Suggest with what Google called "Google Instant" slightly later.  (Google, too, filed a bevy of patent applications covering Google Instant).[1]  These search companies were all very proud of such instant-search functionality.

And rightly so.  Instant search was new and novel when first claimed.  But it was just not new for eBay (or Google or Yahoo! for that matter).  To the contrary, this technology was first developed, claimed, and sold by a Netherlands-based search company, MasterObjects, more than a decade ago.  MasterObjects filed its first "instant" search patent in August 2001; it now has three issued patents, two asserted here.[2]

Given eBay's wholesale endorsement of the novelty of instant search, an endorsement echoed by the major search engine companies, this case will turn on claims construction. Pragmatically, claims construction is a result-oriented process.  Even so, a party's proposed constructions should at least bear *some* resemblance to the language of the claims and description in the specification.  eBay's proposed constructions do neither.

eBay consistently does three things wrong.  First, the company takes a narrow illustration in the one highly specific enabling embodiment and then tries to limit the claims to that one embodiment.  It does this in large part by taking a "Glossary" explicitly limited to the preferred embodiment – the "QuestObjects System" that MasterObjects built and sold –

---

[1]     *See* U.S. Patent Nos. 7,836,044 ("Anticipated Query Generation and Processing in a Search Engine"); 8,156,109 ("Anticipated Query Generation and Processing in a Search Engine"); and, 8,271,471 ("Anticipated Query Generation and Processing in a Search Engine"). Hosie Decl., Ex. A-C.

[2]     U.S. Patent No. 7,752,326, "System and Method for Utilizing Asynchronous Client Server Communication Objects," July 6, 2010 ("'326") (not asserted); U.S. Patent No. 8,060,639, "System and Method for Utilizing Asynchronous Client Server Communication Objects," November 15, 2011 ("'639"); and, U.S. Patent No. 8,112,529, "System and

… (Footnote continued on next page) …

and then reads limitations in that QuestObjects Glossary ("Glossary") into the claims themselves.  Importing a limitation from a specific embodiment into a claim contradicts basic claims construction law, *see* below § III, and is only proper where "the patentee has demonstrated *a clear intent* to limit the claim using '*words or expressions of manifest execution or restriction.*'"  *See Trading Technologies International, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010), quoting *Liebel-Flarsheim Company v. Medrad, Inc.*, 358 F.3d 898, 905 (Fed. Cir. 2004) (emphasis ours).  Such limiting "clear intent made manifest" is not remotely present here.

Second, even with the preferred embodiment, eBay uses the definition for one term, *e.g.* "content engine," in the preferred embodiment to define a **wholly different** term, "content source."  *See* below § III.  It does so to burden the claim with extra-textual limitations, all designed to ensure that no system in the world could ever infringe.  It is not helpful to define a Buick by referencing a banana, particularly when neither is described accurately.

Third, eBay often injects new and profoundly vague terms into its constructions, *e.g.* "maintaining state."  It does this three different times – for session, server object and client object – and is thrice wrong.  These new "maintaining state" limitations would themselves make for a robust claims fight.  Construction is all about simplifying and narrowing issues; eBay's imaginative constructions do exactly the converse.

In contrast, MasterObjects' constructions are simple and dead faithful to the language of the claims and descriptions in the specifications.  Many of these terms are **expressly** defined in the claims themselves, *e.g.* "content-based cache," all of which eBay studiously

---

Method for Asynchronous Client Server Session Communication," February 7, 2012

… (Footnote continued on next page) …

ignores.  MasterObjects' constructions capture exactly the bargain between the inventor and

the PTO.  They should be adopted here.

## II.   STATEMENT OF FACTS: MASTEROBJECTS' INVENTIONS AND PRODUCTS.

In 1999 and 2000, Mark Smit was a young computer scientist working on relational

databases and complex document search and retrieval issues for a technology company near

Amsterdam.  He found the technology frustrating and slow, and thought he could build a

better mousetrap.  Accordingly, he left his job, and put his life savings in a new company

founded to develop better search technology.  He called the company MasterObjects, and it

still exists today.

By the summer of 2001, Mr. Smit had fully conceived of a new search paradigm.  He

created a way to have instant search results provided, character by character, as the user

typed.  There were several critical parts of this invention, as follows:

*Asynchronous Communication*

In the old search model, the communication was "synchronous," *i.e.*, the server would

sit idle until the user hit submit, whereupon the server would do its work, and then return the

information to the client.  As the client worked, the server waited; as the server

communicated, the client waited (think tennis).  To break this "request-response" loop, Mr.

Smit understood that he needed a new communication protocol that was asynchronous, *i.e.*,

the client and the server could talk to each other asynchronously within a session in a non-

blocking way, *i.e.*, both could communicate at once, as against the server waiting until the

client finished and vice versa.  That is, once the client initiated a search session, by starting to

type in a search request, the client and server can communicate in a non-blocking way.  It is

("'529").  *See* Hosie Decl., Exs. D-F.

the difference between a walkie-talkie ("roger, over") and a telephone (where the parties can speak at any time, even simultaneously, within a conversation). This "asynchronous communications protocol" let the client and the server exchange information even as the user typed.

*Caching*

Along the same lines, Mr. Smit understood the importance of storing ("caching") prior queries and corresponding results. Critical to making instant search possible is the notion of storing the most common prior queries and the search results for those queries. With these stores, known as "caches," the system had the speed to associate a few characters of a new request with a pre-existing copy of the same request and results thereto, and provide the right results right away.

*"Session": the more you type, the more accurate the information returned*

Also critical was the notion of a "session," *i.e.*, the time period where a user sits down and types in a query, a search session. As each letter is entered, the search becomes increasingly focused, and the results returned increasingly accurate: "A" becomes "AP" becomes "APE," and the results go from profuse ("A" produces tens of thousands of products) to the very specific ("Apes Legacy"). The lengthening query produces increasingly relevant and responsive information.

In August 2001, Mr. Smit filed the first of what would be three patent applications, now the '529 patent. The specification describes all of the above aspects and fully enables the instant search invention. This application was followed by the two others, and by early 2012, MasterObjects owned the three patents asserted here.

The patents set forth general claims, and each contain one highly detailed embodiment, the "QuestObjects' System." That embodiment reflected the very specific

product that MasterObjects built, including such oddities as "Questlets," and "Questors,"[3] and the like.  The specifications make plain that the specific embodiment was included to prove enablement, not to constrain the claims.

After it filed its first application, MasterObjects hired software developers and entered the market in 2004.  It had significant sales, including to Hewlett-Packard, Siemens, and Princeton University.  It remains in business today.

*eBay Search Suggestions*

eBay Suggestions is now enabled by default on the eBay site.  eBay has a massive site with literally millions of products listed for sale.  Key to eBay's success is a good search function; one cannot buy what one cannot find.

eBay released "eBay Suggestion" in October 2008.  With this product, eBay suggests completed queries and provides instant results, even as the user types.  eBay does this by building a cache of prior user queries and corresponding results, along with an asynchronous communication protocol, so that the server may respond as the user types character-by-character.  As eBay put it:

> Leveraging the power of the millions of searches conducted on eBay each day, this tool uses the power of the community to provide suggestions in real time right from the search box.  We hope this will allow users to search faster and more efficiently as well as provide inspiration based on successful searches, common queries, done by the eBay community.

*See* http://workshops.ebay.com/thread.jspa?threadID=140000212, Hosie Decl., Ex. G.

///

///

---

[3]       "Quest": a search for something.

### III.    **THE LAW.**

In interpreting a patent claim, "the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Computer Docking Station Corp. v. Dell, Inc*., 519 F.3d 1366, 1373 (Fed. Cir. 2008).

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (C.A. Fed. 2005).  The claims are the prime real estate in a patent, and "words of a claim are generally given their ordinary and customary meaning," as understood by "person of ordinary skill in the art."  *Id*. at 1313.  The "context of the surrounding words of the claim" also "provide substantial guidance."  *Id*. at 1314.

Limitations from the specification should not be read into the claims, especially when the limitations relate to one enabling embodiment.  A "patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Kara Technology Inc. v. Stamps.com Inc*., 582 F.3d 1341, 1348 (Fed. Cir. 2009).  *Accord, Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

Where the "specification uses a single embodiment to enable the claims, courts should not limit the broader claim language to that embodiment 'unless the patentee has demonstrated a clear intent to limit the claim scope using words or expressions of manifest execution or restriction.'"  *See Trading Technologies*, 595 F.3d 1340, 1352 (Fed. Cir. 2010).

The Federal Circuit has been clear on the error of reading limitations from a specific embodiment into the claims:

Appellees cannot overcome the plain meaning of claim 1 by pointing to an embodiment disclosed in the specification or prosecution history. *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed.Cir.2002) (**An accused infringer cannot overcome the plain meaning of a claim term "simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history."**). It is "not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner v. Sony Computer Entertainment LLC,* 669 F.3d 1362, 1366 (Fed.Cir.2012); *see also CCS Fitness,* 288 F.3d 1366 ("[O]ur case law makes clear that a patentee need not 'describe in the specification every conceivable and possible future embodiment of his invention'" (citation omitted)). **We do not read limitations from the specification into claims.**

*Toshiba Corp. v. Imation Corp.,* F.3d 2012 WL 2087187 *10 (Fed. Cir. 2012). (emphasis added).[4]

## IV.     THE TERMS.

The terms in dispute break into five distinct groups: (1) "**content source**," (where the search results come from); (2) the "**cache**" terms (where search results are stored for instant retrieval); (3), the two **communication protocol** terms (how the machines talk to one another); (4) "**session**" (a specific search session, *e.g.*, looking for the Apes Legacy set); and, (5) "**server** and **client object**" (eBay argues that these simple terms have a lurking maintaining state limitation; they do not).

### A.     "Content Source(s)."

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|--------|-----------|--------------------------------------|------------------------------|
| '529: 1 | "content source(s)" | A server computer that provides information. | A data source on a server computer that performs string-based queries and provides data |

---

[4]     *See also MySpace, Inc. v. GraphOn Corp.,* 672 F.3d 1250, 1255 (Fed. Cir. 2012). ("Limitations from parts of the written description, such as the details of the preferred embodiment, cannot be read into the claims absent a clear intention by the patentee to do so.")

| | | | to the system. |
|---|---|---|---|

Plaintiff defines "content source" simply and plainly: "A server computer that provides information." This is exactly what the claims say in describing how information is retrieved: the system stores "**content or other information previously retrieved** from the server system **or one or more content sources**…." '529 Claim 1, Hosie Decl., Ex. F (emphasis ours). Information is retrieved from a content source, *e.g.*, a server with weather information, or another server with information on movies.[5] It would be hard to put this more plainly.

eBay's proposed construction manages to be both less plain and quite ambiguous. eBay agrees that a content source is a data source on a server, with data presumably being a synonym for information. So far, so good. It then adds, not-so-subtly, several additional limitations: (1) that the server hosting the data source perform string-based queries (or is it the **data source** itself that performs string-based queries?), and (2) implies (we think) that all of this needs to be on one server – a unified data source on a server computer doing string-based queries.

To start, replacing a clear term "content source" with a multilayered opacity is hardly progress. Is it not clear in eBay's construction what is doing the string-based queries: the server or data source, or perhaps both.

Second, these additional limitations (whatever they may be) are not in the claims. For example, the pertinent portion of '529, Claim 1 simply says that the cache includes "*content or other information previously retrieved from the server system or one or more content sources in response to previous queries.*" So, whence these additional limitations?

The short answer is that eBay is making it up.  Its Joint Claim Construction and Prehearing Statement ("JCCS") support cites several portions of the specification, none of which support eBay's construction.

eBay's first reference comes on column 8, lines 55-62:

> The present invention is also particularly useful for assistance in data entry applications, but can also be used to simply and quickly retrieve up-to-date information from essentially any **string-based content source**….

Hosie Decl., Ex. F; *see* JCCS at 22.  There is nothing in this general description that says the term "content source" must means a data source on a one server that performs string-based queries.

eBay's second citation comes from the Glossary for the very specific "QuestObjects System" embodiment.  *See* JCCS at 22.  The definition is not for the term it construes, content source, but for a wholly different term entirely: "content engine."  And that definition is "a dynamic data source that provides data to a content channel by accessing its own database or by querying other information systems."  Hosie Decl., Ex. F at Column 10, lines 24-26.

It seems odd to stretch so far for something that offers so little support.  There is nothing in this "content engine" definition that supports eBay's restriction of "content source" to a data source in a server performing string-based queries.  It is simply not what the definition says.  More, why use the definition for "content engine" to define a different term, "content source"?

---

5    *See also* '639 patent at 10:22-32 ("Content source: A server computer that provides the data…").  Hosie Decl., Ex. E.

Finally, this is a definition from the preferred embodiment, and eBay errs when it pretends that the claims are no broader than the enabling embodiment (and more on this immediately below).

Content source is a server that provides information -- content -- nothing more.

**B.     The Cache Terms.**

The parties agree that the related terms "content-based cache/query and result cache," should be given the same meaning, but disagree about the meaning.

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|--------|-----------|--------------------------------------|------------------------------|
| '639: 1, 13; '529: 1, 44 | "content-based cache/query and result cache" | A cache which stores previous queries and content or other information returned in response to the previous queries. | A persistent store of queries and corresponding result sets executed by a content engine for a specific content channel. |

Claim 1 of the '529 patent *expressly* defines a "content based cache" as a cache which "stores previous queries and corresponding result sets."  How more clearly could this be said?  Prior queries, *e.g.*, "APE" and results returned – the legacy box set.  Hosie Decl., Ex. F.  This term is also discussed in the '529 specific embodiment in exactly the same way: "Content-based Cache – A persistent store of Queries and corresponding Result Sets…."  *Id.* at Col. 10, l. 16-18.  So, too, Claim 1 of the '639 patent likewise defines a "query and result cache" as a cache that stores prior queries and "content results previously returned from the server."  Hosie Decl., Ex. E.  These "caches" are expressly defined in the claims themselves.[6]

eBay comes by this definition by using the Glossary for the MasterObjects system again.  That Glossary defines a "content based cache" for the embodiment as a "Content-based Cache – A persistent store of Queries and corresponding Result Sets executed by a

Content Engine for a specific Content Channel." Hosie Decl., Ex. F at 10:17-19 (all caps in original, as a defined embodiment term).

But this is a definition from the highly detailed MasterObjects QuestObjects preferred embodiment. This is the product that MasterObjects built and sold. The patent makes it clear that the embodiment is spelled out in great detail to prove enablement. *Id.* at 31:33-44. Patents are often drafted with one detailed embodiment to prove enablement, but with more general claims. So it is here.

There is no ambiguity that the glossary is for the MasterObjects preferred embodiment. The glossary is introduced by the following language:

> In the detailed description below, **an embodiment of the present invention is referred to as QuestObjects** and provides a system of managing client input, server queries, server responses and client output.…  Other terms used to describe the QuestObjects system in detail can be found in the glossary below: [the glossary follows].

*Id.* at 9:49-56.

Indeed, immediately after the lengthy description of the MasterObjects QuestObjects embodiment, the specification notes that it is just an embodiment:

> The foregoing description of preferred embodiments of the present invention has been provided for the purposes of illustration and description.  It is not intended to be exhaustive or to limit the invention to the precise forms disclosed.…  **It is intended that the scope of the invention be defined by the following claims and their equivalence.**

*Id.* at 31:33-44.[7]

---

[6]     The prosecution history is fully in accord. *See* Appeal Br. at 30 ("Claim 1 includes the feature of a content-based cache, at the server system, which stores previous queries and corresponding result sets…").  Hosie Decl., Ex. H.

[7]     That the Glossary is for the QuestObjects embodiment alone is also underscored by what the Glossary does **not** say.  For example, it does not define "content source," a key term

… (Footnote continued on next page) …

eBay violates a canonical claims construction rule by reading a limitation in an embodiment into the claims.  The claims here **expressly** define the cache terms.  eBay would have a grace note replace the symphony.

### C.     The Communication and Protocol Terms.

There are two communication terms, "asynchronous connection" and "communication protocol."

### 1.     "Asynchronous connection."

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '529:1 '639: 1, 13 | "asynchronous connection" | A connection that allows one side of the communication to communicate at the same time the other side is also communicating within a session. | A connection that allows one side of the communication to communicate at the same time as the other side at any moment in time within a session. |

The parties' definition for "asynchronous connection" sounds very similar.  What, then, is the issue?

This is a fight about one word: "initiate."  eBay has added the word "initiate" to the definition because it wants to argue that a server only **responds** to a request from a client, within a search session.  That is, and as set forth in the specification, as the client types, an increasingly lengthy query is sent to the server, "A" becomes "AP," becomes "APE," etc.  As the server receives the additional characters, it responds with even more relevant results.  The patent focuses on the server's ability to respond even as the client continues; the communication is non-blocking.  But eBay wants to argue that such server responses are not

---

in the '529 claims, precisely because the claims themselves define the term and because "content source" was not part of the QuestObjects System.  Instead, the general notion of a source for content was replaced, in the QuestObjects System, by far more detailed terms: "content engine," "content access module," and "content channel."

examples of a server "initiating communications," but simply responding, and so construct,

as it were, a non-infringement argument.

eBay's support for its construction comes from one reference in the detailed description of the QuestObjects specific embodiment.  Specifically, just after the embodiment specific glossary, the specification says that "[t]he terms 'client' and 'server' are used herein to reflect a specific embodiment of the invention although it will be evident to one skilled in the art that the invention may be equally used with any implementation that requires communication between a first process or application and a second process or application, regardless of whether these processes comprise a typical client-server setup or not."  Hosie Decl., Ex. F at column 11:46-55.

The specification continues by emphasizing the embodiment specific nature of the discussion: "In accordance with one embodiment of the invention the system is session-based, in that the server knows or recognizes when subsequent requests originate at the same Client.  Thus, in responding to a character the Server receives from a Client it can use the history of data that has been sent to and from the current user."  *Id.* at 12:9-14.  **This is embodiment specific.**

The specification then continues to give further detail of this one session-based embodiment:

> The system is bi-directional and asynchronous, in **that both the Client and the Server can initiate communications at any moment in time**…. For example, a communication initiated by the Client may be a single character that is sent to the Server, that responds by returning appropriate data.  An example of a communication initiated by the Server is updating the information provided to the client.  Because this system is session-based it can keep track of database information that has been sent to the Client.

*Id.* at 12:22-34.  These patents make clear that this server push ("Good morning!  Want some search results?") is just one particular embodiment, not generally a limitation baked into the claims.

## 2. "Communication protocol."

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '529: 1, 44 '639: 1, 13 | "communication protocol" | A set of rules that enable computers to exchange messages with each other. | A set of rules that enable computers to exchange messages with each other and that is optimized for sending single characters from a client to a server and lists of strings from the server to the client. |

MasterObjects defines "communication protocol" simply as "a set of rules that enable computers to exchange messages with each other."  This is how the term is used in the claims, *e.g.*, Hosie Decl., Ex. E, '639 Claims 1, 13 ("a communication protocol that enables an asynchronous connection…").  This term is the companion to "asynchronous connection."  That is, the communication protocol **enables** an asynchronous connection over a network between a client system and a server system.

eBay takes this plain meaning and then adds an unsupported limitation, specifically, a protocol "optimized for sending **single** characters from a client to a server and lists of strings from a server to the client."  (Emphasis ours).

This is not, of course, what the claims say.  So, what is eBay's support for this "optimized for sending singe characters" limitation?  Once again, eBay seizes a specific description in one preferred embodiment, the QuestObjects System, and then reads that

embodiment-specific limitation into the claims proper.[8]  For example, the '529 specification makes clear the language eBay cites relates to one specific embodiment, the QuestObjects System, as follows:

- First, the Specification identifies the following discussion as embodiment specific:

> In the detailed description below, **an embodiment** of the present invention is referred to as **QuestObjects**, and provides a system for managing client input….

Hosie Decl., Ex. F at 9:49-50 (emphasis added).

- Second, the Specification further identifies that QuestObjects embodiment involves a "client" and a server, *but states that the invention is not so limited*:

> The terms "client" and "server" are used herein to reflect a specific embodiment of the invention….

*Id.* at 11:48-50.

- Third, the Specification then says that **this** particular "Client" "Server" embodiment uses a:

> [C]ommunication protocol that is optimized for sending single characters from a Client to a Server, and lists of strings from the Server to the Client.

*Id.* at 11:57-59 (upper case in original for "Client" and "Server," as defined embodiment terms).

In all three patents, the word "single" (to modify characters) is used just once,[9] and then only with regard to the product MasterObjects built.  There are scores of specific

---

[8]     And the why of it: eBay will argue that its protocols are optimized for sending characters, but not necessarily optimized for sending "single characters."  Motives matter in claims construction.

references that make clear that the **claims** are not limited to a system "optimized for sending single characters"; *e.g.*:

- The claims themselves: "A communication protocol that enables an asynchronous connection over a network between a client system and a server system, and allows the client system to send via the network, and within a session between the client system and the server system, a lengthening **string** composed of a plurality of consecutively input characters…." Hosie Decl., Ex. F at Claim 1. A "string" is more than just a single character

- The text of the specification, immediately below the quote eBay likes: "The system's protocol is not restricted to sending single characters. In fact, Clients can also use the protocol to send a string of characters." *Id.* at 12:3-8. *See also* '529 12:49-53 ("including but not limited to single characters…").

- And the one specific example in the text of the patents-in-suit of an actual client message **is** a string of multiple characters. *See* Hosie Decl., Ex. D at 32:41-48 [sending two characters, "be").

- Claim 8 of '529 even calls out waiting to send out a "plurality of said single character queries together as a single string…." Hosie Decl., Ex. F at 32:62-65.

Against all of this, eBay has one argument: that the description of the embodiment uses the phrase "the invention" in describing the embodiment. *Id.* '529 at 11; 55. And while it is true that a "patentee's *consistent* reference to a certain limitation of a preferred embodiment as 'this invention' or the 'preset invention' can serve to limit the scope of the entire invention," this is not so where such references are not "uniform" or are contradicted by other portions of the intrinsic evidence:

> On the other hand, we have found that use of the phrase "present invention" or "this invention" is not always so limiting, such as where the references to a certain limitation as being the "invention" are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent. *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1320-22

---

[9] The '326 and '639 patents describe the embodiment as optimized for sending characters, not single characters. *See* Hosie Decl., Ex. D at 14:15-17; Hosie Decl., Ex. E at 13:59-61.

(Fed.Cir.2008) (although parts of **1137** the specification referred to a certain embodiment as the "present invention," the specification did not uniformly refer to the invention as being so limited, and the prosecution history did not reveal such a limitation); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1326 (Fed.Cir.2008) (references to a specific embodiment as "the apparatus of this invention" and "a useful feature of this invention" in the specification "are contradicted by a number of express statements in the '609 specification clearly indicating that [the feature at issue] is a feature only of certain embodiments"); *Rambus, Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1094-95 (Fed.Cir.2003) (although portions of the written description referred to the term at issue as limiting the claimed invention to a preferred embodiment, "the remainder of the specification and the prosecution history shows that Rambus did not clearly disclaim or disavow such claim scope in this case").

*See Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121 (Fed. Cir. 2011) at 1136-1137. There was no intent to limit the claims to a protocol optimized for sending single characters alone, and indeed the significant weight of the evidence is to the contrary.

    **D.**    **"Session."**

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '639: 1, 13 '529: 1, 44 | "session" | A related set of communications between a client and a server as the user enters a particular search query by entering consecutive characters. | A state maintained between a client and a single server in which the server recognizes when subsequent requests originate from the same user such that information about the user's past queries is required to process the current request. |

"Session" and its variant "user session" have plain and common sense meaning: a search session when a computer user sits down and starts to look for something online. This activity – the act of a specific search – is a user search session. How else would one describe this?

    This plain meaning is set out in the claims themselves:

        [A] communication protocol that enables an asynchronous connection over a network between the client system and a server system, and allows the client system to send via the network, **and within a session between the client system and the server**

**system**, a lengthening string… to query the server system for
string-based content, while asynchronously receiving consecutive
responses from the server system as the characters are being input.

Hosie Decl., Ex. F at Claim 1 (emphasis added).  A user typing in "A," then "P," then "E" is

involved in a search session.

In the MasterObjects' claims, each consecutive character is associated with the

existing characters, as against being considered a brand new freestanding request.  That is,

when the user types in the third letter in the example above to get "APE," the system knows

that it is looking for results responsive to "APE," *not results responsive to a freestanding*

*"E."*[10]  This is because the system is user session-based, such that the typing of additional

characters makes the string longer, more focused, and the results correspondingly more

focused and accurate.  And so we go from the iPhone 4S to the "Apes Legacy" set.

This meaning of session is explicitly set forth in the specification, as well.  For

example, the specification for '529 says the following:

Roughly described, the invention provides a session-based bi-
directional multi-tier client-server asynchronous information
database search and retrieval system for sending a character-by-
character string of data to an intelligent server that can be
configured to immediately **analyze the lengthening string
character-by-character and return to the client increasingly
appropriate database information** as the client sends the string.

*Id.* at 8:25-33 (emphasis ours).  The user sits down, starts to type, and the system returns

increasingly relevant content.

---

[10]      In eBay Suggests, "Ape" returns Planet of, while a freestanding "E" returns a
smorgasbord of "earrings" to "Ed Hardy" with no real-time product results.  Sending
freestanding characters defeats the entire purpose of the invention.

MasterObjects' proposed definition captures the description in the claims and specification exactly.  A session is a related set of communications between a client and a server as the user enters a lengthening search query by entering consecutive characters.

In contrast, eBay's proposed construction is at once complex and ambiguous.  eBay says that session means (1) "a state maintained between a client and server," such that, (2) the server "recognizes when subsequent requests originate from the same user," so that (3) "information about the user's past queries is required to process the request."

To start, it is not remotely clear what this means.  What does it mean to say that "state" is maintained between the client and single server?  The object of claims construction is to simplify and clarify; eBay's undefined notion of "state" maintained between the client and a single[11] server simply serves to proliferate disputes.

Along the same lines, eBay's additional requirement that "information about the user's past queries" is "required" is both unsupported and opaque.  What information?  How required"?  These two limitations would make for a robust claims hearing in and of themselves.

eBay cites two things in support for at least some of its additional limitations: a specific embodiment in the '529 patent and a piece of prosecution history.  On the first point, that specification describes one specific embodiment, the QuestObjects System, in great detail.  As to the session in this one embodiment, the specification reads as follows:

> In accordance **with one embodiment** of the invention the system is session-based, in that the server knows or recognizes when subsequent requests originate at the same Client.

---

[11]     And why one single server?  The specification is explicit that there can be multiple servers involved in the back end.  *See, e.g.*, '529 specification at 5:67-6:2 ("A plurality of servers can be used…").  Hosie Decl., Ex. F.

'529 Specification at 12:9-11, *id.*

On the second point, eBay argues that MasterObjects distinguished in the prosecution a prior art reference, Spaey, by stating that MasterObjects' invention was **limited** to a system where information about a user's past queries is absolutely required to answer current queries. *See* JCCS at 29-30.

This is neither accurate nor fair.  Spaey neither discusses nor discloses any notion of a session.  In distinguishing Spaey, MasterObjects said, amongst other things, that Spaey did not disclose or turn on any notion of a session whatsoever.  This is in contrast to MasterObjects, where the claims turn on a general notion of a search session, with a lengthening string and increasingly relevant responses, and where one specific embodiment permits using prior search history for current search purposes.  By distinguishing Spaey as not involving sessions at all, MasterObjects was not clearly and unambiguously limiting itself to a session-based protocol turning on past search requests, especially given the explicit language of the claims to the contrary.  Indeed, there was no reason to so limit as Spaey did not even teach such a general notion of session; this was not a case where a narrowed claim scope on "session" was necessary to distinguish Spaey.

**E.** **"Server Object."**

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|--------|-----------|--------------------------------------|------------------------------|
| '529: 1 | "server object" | A software component or function located on a server. | A computer program module executing on the server that maintains the state between the client and the server. |

In computer programming, an "object" is a computer program or module.  The parties agree on at least this much here.

The disagreement comes with an additional limitation that eBay has levered into the claim: for both client and server objects, eBay says that it is a program (okay, so far) that "maintains the state between the Client and the Server."  The question here is whether eBay is correct in reading this additional "maintaining state" requirement into the construction of client and server object.

There are two things wrong with eBay's new limitation.  First, it is not clear what this means.  What state?  How maintained?  This construction just invites another claims dispute.

Second, there is no support for eBay's new limitation.  None of the intrinsic evidence eBay cites in its JCCS supports an additional "maintaining state" limitation.  For example, here is the definition from Microsoft's Computer Dictionary:

> **object-oriented programming** *n.*  A programming paradigm in which a program is viewed as a collection of discrete objects that are self-contained collections of data structures and routines that interact with other objects.  *Acronym:* OOP.  *See also* C++, object (definition 2), Objective-C.

Hosie Decl., Ex. I, "Microsoft Computer Dictionary," Fifth Edition, at 373.  There is nothing here about maintaining state.  Nor is there any "state" support in the other extrinsic evidence eBay cites.

The only other evidence eBay cites in its JCCS is a blanket citations to prior briefs and three days of deposition transcript.[12]  There is nothing in these transcripts that says that client and server object carry an additional limitation of maintaining state.

---

[12]      eBay has not remotely complied with its obligations under the local rules to identify support in its JCCS.  A blanket citation to three days of deposition testimony generally is not helpful and indeed not a citation to enhance at all.  Why not just cite to the Library of Congress?

Against eBay's contrivance, we have the plain language of the claims.  For example, Claim 1 of MasterObjects' '529 patent describes what the "client object" is and does:

> [A] client object, in communication with a client software at the client system and with the communication protocol wherein the client object receives, as input, consecutive additional characters from the client software, and while each of the consecutive additional characters are being received as input, transmits via the network to a server object at the server system one or more corresponding consecutive queries, within the session between the client system and the server system to retrieve content from the server system.

Hosie Decl., Ex. F at 31:65-32:9.  There is nothing here, either, concerning some obligation to maintain state.

eBay's additional "maintaining state" limitation is improper and unwarranted.  Client and server object are exactly that: programs residing either on the client or the server.

### F.      "Client Object."

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '529: 1, 9 | "client object" | A software component or function located on a client. | A computer program module executing on the client that maintains the state between the client and the server. |

eBay's "client object" argument simply reprises its server object construction.  While eBay maintains that state must be maintained, that is not what the claims say.  Nor specifications.  Nor extrinsic evidence.

## V.      CONCLUSION.

For the foregoing reasons, MasterObjects respectfully requests that this Court enter MasterObjects' proposed claim constructions.

///

///

1    Dated: December 11, 2012          Respectfully submitted:

2

3                                      */s/ Spencer Hosie*_____
                                       SPENCER HOSIE (CA Bar No. 101777)
4                                      shosie@hosielaw.com
                                       DIANE S. RICE (CA Bar No. 118303)
5                                      drice@hosielaw.com
                                       DARRELL R. ATKINSON (CA Bar No. 280564)
6                                      datkinson@hosielaw.com
                                       HOSIE RICE LLP
7                                      Transamerica Pyramid
                                       600 Montgomery Street, 34th Floor
8                                      San Francisco, CA 94111
                                       (415) 247-6000 Tel.
9                                      (415) 247-6001 Fax
10
                                       Attorneys for Plaintiff
11                                     *MasterObjects, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28