IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASTEROBJECTS, INC., | Case No.: 3:12-cv-680 JSC |
| Plaintiff, | **CLAIM CONSTRUCTION ORDER** |
| v. | |
| EBAY, INC., | |
| Defendant. | |

In this patent infringement action Plaintiff MasterObjects, Inc. alleges Defendant eBay Inc. infringes U.S. Patent 8,112,529, "System and Method for Asychronous Client Server Session Communication," (the "'529 Patent") and U.S. Patent Nos. 8,060,639, "System and Method for Utilizing Asynchronous Client Server Communication Objects (the "'639 Patent"). The parties have asked the Court to construe eight disputed claim terms.[1] The primary legal issues presented by the parties' dispute are when a court may read a limitation from the specification or, more precisely, from a preferred embodiment, into a claim and when a claim may be limited by statements made during the prosecution history.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

**THE PATENTS-IN-SUIT**

This lawsuit involves computer-aided search queries.  The '529 Patent relates to a "session-based bi-directional multi-tier client-server asynchronous search and retrieval system and retrieval system."  *See* '539 Patent Col. 1:17-20.  The '639 Patent, a related patent, describes an asynchronous information search and retrieval system to be utilized for "interactive database searching, data entry, online purchasing, and other applications." *See* '639 Patent Col.1:38-40.   The goal of the inventions is to provide instant search results character by character as the user types a query.

**LEGAL STANDARDS**

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks and citations omitted).  Generally, claim terms are given the ordinary and customary meaning that would be ascribed to them by a person of ordinary skill in the field of the invention.  *Id*. at 1312–13; *see also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[U]nless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill").

The most "significant source of the legally operative meaning of disputed claim language" is the intrinsic evidence of record, that is, the claims, the specification and the prosecution history.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  This is because "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Phillips*, 415 F.3d at 1313.  Thus, "[t]he inventor's words that are used to describe the invention—the inventor's lexicography—must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology."  *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998); *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also

must be considered in determining the ordinary and customary meaning of those terms"). In some cases, the specification may reveal a "special definition" given by the inventor that differs from the meaning the term might otherwise possess. *Phillips*, 1415 F.3d at 1316. In such instances, "the inventor's lexicography governs." *Id*. Similarly, a specification may reveal "an intentional disclaimer, or disavowal, of claim scope by the inventor." *Id*.

While claims are to be construed in light of the specification, courts must be careful not to read limitations from the specification into the claim. *Phillips*, 415 F.3d at 1323. For example, if a patent specification describes only a single embodiment of a claimed invention that does not mean the claims of the patent necessarily must be construed as limited to that embodiment. *Id*. Rather, the purpose of the specification "is to teach and enable those of skill in the art to make and use the invention" and often the best way to do so is to provide an example. *Id*. However, the court "cannot look at the ordinary meaning of the term. . . in a vacuum. Rather, [it] must look at the ordinary meaning in the context of the written description and the prosecution history." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005). Further, arguments and amendments made during patent prosecution limit the interpretation of claim terms to exclude constructions that were disclaimed to obtain allowance of a claim. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

## CONSTRUCTION OF CLAIM TERMS

The parties jointly submitted eight claim terms for construction consistent with Patent Local Rule 4-3 and the Court's Case Management Order. The parties have grouped the eight terms within five separate categories. The disputes present two principal legal questions: (1) when should a limitation found in the specification be read into the claims, and (2) when do statements made during the prosecution history limit the construction of the claims. The Court will explore these questions further in the context of the discussion of the specific claim construction disputes. After considering the parties' briefing, the oral and written arguments presented at the *Markman* hearing, and for the reasons explained below, the disputed terms are construed as follows.

**A. Communication Protocol Terms**

**1. "Asynchronous connection"**

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '529:1<br>'639: 1, 13 | "asynchronous connection" | A connection that allows one side of the communication to communicate at the same time the other side is also communicating within a session. | A connection that allows one side of the communication to initiate communications at the same time as the other side at any moment in time within a session. |

Claim 1 of the '529 claims:

> 1. A system for retrieval at a client system of content from a server system, comprising:

> a communication protocol that enables an **asynchronous connection** over a network between a client system and a server system, and allows the client system to send via the network, and within a session between the client system and the server system, a lengthening string composed of a plurality of consecutively input characters, to query the server system for string-based content, while asynchronously receiving consecutive responses from the server system as the characters are being input;

'529 Patent Col. 31:50-58 (emphasis added).

The '639, Claims 1 and 13, similarly claim:

> 1. A system for enabling searches of content at a server, comprising:
> . . . .
> a communication protocol which enables an **asynchronous connection** between the clients and the server, and allows each client to communicate, under control of a user and as part of a session, a plurality of consecutive query strings to query the server for content; and

'639 Patent Col. 41:2-10, Col. 42:23-28 (emphasis added).

The parties dispute the meaning of "asynchronous connection." They agree that such a connection must allow one side of the communication to communicate with the other side at the same time, that is, like telephones rather than walkie talkies. They disagree, however, as to whether an asynchronous connection must allow the server as well as the user to "initiate"

United States District Court
Northern District of California

a communication during a particular session.  In other words, whether during any particular session the server sends the user updated search responses without awaiting further input (or characters) from the user.   eBay contends that the claims demand that the server be able to initiate such communications while MasterObjects contend they do not.

eBay agrees that the ordinary meaning of  "asynchronous connection" as used in the claims does not require the server to initiate a communication.  For example, Claim 1 of the '529 describes the *client* sending the server a lengthening string of characters and the client then receiving *responses* from the server; it does not require the server to initiate any communication.  '529 Patent Col. 31:52-58.  Claims 1 and 13 of the '639 similarly describe the *client* sending communications to the server, and the server *returning* or responding to communications from the client.  '639 Patent Col. 41:23-24, Col. 42:51-52.  In other words, the server is always receiving and responding, but never initiating.

eBay nonetheless argues that the specification teaches one skilled in the art that the server must also be able to initiate a communication during a session.  In support of its construction it relies on a paragraph from the "detailed description" in the specification:

> *The system is bi-directional and asynchronous, in that both the Client and the Server can initiate communications at any moment in time*.  The functionality of the system is such that it can run in parallel with the normal operation of clients.  Tasks that clients execute on the system are non-blocking, and clients may resume normal operation while the system is performing those tasks.  For example, a communication initiated by the Client may be a single character that is sent to the Server, that responds by returning appropriate data.  *An example of a communication initiated by the Server is updating the information provided to the client*.  Because the system is session-based it can keep track of database information that has been sent to the Client.  As information changes in the database, the Server sends an updated version of that information to the Client.

'529 Patent Col. 12:22-36 (emphasis added); '639 Patent Col. 14:25-39.  eBay contends that this paragraph unambiguously describes the claimed invention, and, in particular, describes the invention as being asynchronous "in that" or "meaning that" the server (as well as the client) "can initiate communications at any moment time."  According to eBay, this specification excerpt is a classic example of an inventor acting as his own lexicographer; one skilled in the art would read this definition of asynchronous communication as requiring the

server to be able to initiate communications. *See Phillips,* 415 F.3d at 1316 ("the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexiography governs"). MasterObjects retorts that this specification language is merely describing the preferred embodiment; eBay is improperly asking the Court to confine the claims to the preferred embodiment. *See Phillips,* 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"); *see also Abbott Laboratories v. Sandoz, Inc.,* 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("[w]hen consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification").

"[T]he distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Phillips*, 415 F.3d at 1323. After reviewing all of the intrinsic evidence, the Court concludes that here eBay is seeking to import a limitation from a specific embodiment into the claims.

The specific language upon which eBay relies appears in the "DETAILED DESCRIPTION" and follows a paragraph which announces that the description that follows is of a preferred embodiment:

> In the detailed description below, embodiments of the present invention are described with reference to a particular embodiment named QuestObjects, created by the MasterObjects company. QuestObjects provides a system and method for managing client input, server queries, server responses and client output. . . . It will be evidence that the technology described herein may be utilized in other embodiments, and with other systems, in addition to the QuestOjects system.

'639 Patent Col. 6:18-29; '529 Patent Col. 9:49-52; *see also* '529 Patent Col. 7:6-15 ("In the detailed description below, the present invention is described with reference to a particular embodiment named QuestObjects"). Further, at the end of the detailed description, the inventor explains again:

> The foregoing description of preferred embodiments of the present invention has been provided for the purposes of illustration and description. *It is not intended to be exhaustive or to limit the invention to the precise forms disclosed.* Obviously, many modifications and variations will be apparent to the practitioner skilled in the art. The embodiments were chosen and described in order to best explain the principles of the invention and its practical application, thereby enabling others skilled in the art to understand the invention for various embodiments and with various modifications that are suited to the particular use contemplated.

'529 Patent Col. 31:33-45 (emphasis added), '639 Patent Col. 40:56-67. eBay's emphasis on Figure 4 is further evidence that the "initiate communication" function is one possible embodiment of the patents rather than a limitation on the claims. The specification explains that Figure 4 "shows a sequence diagram illustrating the use of a system *in accordance with an embodiment of the invention*." '529 Patent Col. 7:63-64 (emphasis added); *see also* '529 Patent Col. 18:16-19 ("Fig. 4 shows a simplified event lifecycle illustrating what happens in a QuestObjects system using an auto-complete Service").

That the language upon which eBay focuses refers to the QuestObjects embodiment is further demonstrated by the use of capitalization. The inventor capitalizes Server and Client to signal that the discussion is referring to the server and client as utilized in the QuestObjects embodiment rather than server and client in the claims. Moreover, other parts of the specification are consistent with the "initiation" or "pushing" of communications from the server being one application or embodiment of the invention, but not a limitation. For example, near the beginning of the detailed description, the specification includes the following paragraph:

> The present invention is useful for an extremely wide variety of applications. It offers a standardized way to access server data that allows immediate user-friendly data feedback based on user input. Data can also be presented to a client without user input, i.e. the data is automatically 'pushed' to the client. This enables a client component to display the data immediately or to transmit it to another software program to be handled as required.

United States District Court
Northern District of California

'529 Patent Col. 8:47-54; *see also* '639 Patent Col. 5:20-24.  This discussion demonstrates that *one* embodiment of the invention is to have the data pushed, not that the claims *require* the initiation of communications by the server.  The summary includes a similar paragraph disclosing that the invention "may be incorporated in a variety of embodiments to suit a correspondingly wide variety of applications," including an application in which "data are automatically pushed to the client."  '529 Patent Col. 6:3-11.

 *Phillips* is instructive.  There an en banc panel of the Federal Circuit reversed the district court for importing a limitation from the preferred embodiment described in the specification to the claim term "baffles."  While the claims did not limit "baffles" to the function of deflecting projectile, the specification contained several references to baffles serving that function.  *Id.* at 1325.  The court held that "baffles" was nonetheless not limited to that function:

> [t]he fact that patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives.  Although deflecting projectiles is one of the advantages of the baffles of the '798 patent, the patent does not require that the inward extending structures always be capable of performing that function.

*Id.* at 1327.  The same result applies here.  Although the specification, and, in particular, the detailed description, asserts that one objective of the '529 and '639 Patents is to permit an application in which the server initiates communications with the client, the patents do not require that the software always be capable of performing that function.

 The cases upon which eBay relies are distinguishable.  In *Boss Control Inc. v. Bombardier Inc.*, 410 F.3d 1372 (Fed. Cir. 2005), the "Background" and "Summary of the Invention" sections of the specification gave the term "interrupt" a special meaning by distinguishing the patent from the prior art.  *Id.* at 1377.  The court went on to explain that the preferred embodiments are consistent with the more detailed description of "interrupt" in the Background and Summary sections and thus the court was not improperly limiting the claims to the preferred embodiments.  *Id.* at 1377-78.  Here, in contrast, eBay does not argue that in the background or summary sections of the specification MasterObjects distinguished the

prior art in a manner that supports eBay's special definition of asynchronous communication; instead, eBay is simply arguing for a construction that confines the claims to a preferred embodiment. This the Court cannot do. *See MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1255 (Fed. Cir. 2012) ("limitations from parts of the written description, such as the details of the preferred embodiment, cannot be read into the claims absent a clear intention by the patentee to do so").

MasterObjects did not limit the meaning of "asynchronous connection" to connections that allow both the client and the server to initiate communications during the prosecution of the patents. "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). The "doctrine does not apply where the alleged disavowal is ambiguous; the disavowal must be both clear and unmistakable to one of ordinary skill in the art." *Elbex Video, Ltd. v. Sensormatic Electronics Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) (internal quotation marks and citation omitted0.

The Court does not find an unambiguous disavowal in the prosecution history highlighted by eBay. In distinguishing the prior non-asynchronous art, MasterObjects described its invention as a

a communication protocol that provides *an asynchronous session-based connection* between a client and a server. As part of a session, the client can send a plurality of consecutively input strings to query the server for content. A client object transmits to a server object a plurality of consecutive queries, within the same session, to retrieve content from the server system. Each consecutive query either *lengthens or shortens the query string by one or more characters*, to form an *increasingly focused query string* by one or more characters, to form an increasingly focused query string for retrieving content from the server system. (For example, the query string can be lengthened by an additional character). A server object records, during the same session, each of the plurality of queries. As the search string is being lengthened or shortened, the server object automatically matches the focused query string against the content of the server system, and returns increasingly relevant content information to the client for immediate use by the client system. Applicant respectfully submits that these features are not disclosed by the cited references.

United States District Court
Northern District of California

1   (Dkt. No. 43-7, p. 11-12.)  This distinction in no way supports eBay's assertion that the

2   inventor limited an asynchronous connection to a communication initiated by the client or the

3   server.

4         In the paragraph that follows the above paragraph, the inventor explains that an

5   "advantage" of the session-based asynchronous nature of the invention is that "both the client

6   and the server can initiate communications at any moment in time" such that the server "can

7   automatically send updated results to the client, without the client user having to click

8   'submit.'"  *Id.* at 12.  The inventor is *not* distinguishing the prior art on the ground that with

9   the invention the server can initiate communication with the client; rather, the inventor is

10  explaining that as a result of the distinguishing feature of the invention—an asynchronous

11  session-based system—the invention *can* have the server initiate communications.  Thus, this

12  prosecution history is consistent with the specification's description of having the server

13  initiate a communication as one possible application of the invention rather than a limitation.

14  It therefore does not narrow the ordinary meaning of asynchronous connection.

15        As the ordinary meaning of the language of the claims at issue to one skilled in the art

16  does not include the limitation that the server initiate communications with the client, and as

17  the specification demonstrates that having the server initiate communications with the client

18  is one function that can be enabled with the invention but not a necessary function, and as the

19  patentee did not narrow "asynchronous connection" during prosecution to require that the

20  server initiate communications with the client, the Court adopts the following construction for

21  asynchronous connection: "a connection that allows one side of the communication to

22  communicate at the same time the other side is also communicating within a session."

23  //

24  //

25  //

26  //

27  //

28  //

United States District Court
Northern District of California

2.      **"Communication Protocol"**

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '529: 1, 44<br>'639: 1, 13 | "communication protocol" | A set of rules that enable computers to exchange messages with each other. | A set of rules that enable computers to exchange messages with each other and that is optimized for sending single characters from a client to a server and lists of strings from the server to the client. |

Here, again, the parties' dispute focuses on the inclusion of an additional limitation from the specification; namely, "optimized for sending single characters from a client to a server." And, once again, eBay does not contend that the additional limitation is derived from the ordinary meaning to one skilled in the art of the claims' language; instead, it again anchors its construction to a definition it claims is found in the specification. In particular, eBay relies on the following specification language: "[t]he invention includes a Server that handles requests for information from clients, and a communication protocol that is optimized for sending characters from a Client to the Server, and lists of strings from the Server to the Client." '639 Patent Col. 13:58-62; '529 Patent Col. 11:55-59. This dispute, as with the dispute over the construction of asynchronous connection, is whether this description is referring solely to a preferred embodiment or more broadly to the patented inventions.

The sentence upon which eBay relies is found in the following paragraph of the '539:

> The present invention provides a system that allows clients or client applications to asynchronously retrieve database information from a remote server of [sic] server application. The terms "client" and "server" are used herein to reflect a specific embodiment of the invention although it will be evidence to one skilled in the art that the invention may be equally used with any implementation that requires communication between a first process or application and a second process or application, regardless of whether these processes comprise a typical client-server set up or not. *The invention* includes a Server, that handles requests for information from clients, *and a communication protocol that is optimized for sending single characters from a Client to a Server*, and lists strings from the Server to the Client. In one embodiment, as the Server receives a single character from the Client, it immediately analyzes the lengthening string of characters and, based on that analysis, returns database information to the

Client in the form of a list of strings.  Clients are not restricted to programs with a user interface.  Generally, any process or mechanism that can send characters and receive string lists can be considered a client of the system.  For example, in an industrial or power supply setting, the control system of a power plant could send sensor readings to the system, and in return receive lists of actions to be taken, based on those sensor readings.

'529 Patent Col. 11:46-12:2 (emphasis added).  The '639 Patent paragraph is nearly identical, except that the first sentence reads: "Embodiments of the present invention provide a system and a method that allows clients or client applications to asynchronously retrieve database information from a remote server or server application."  '639 Patent Col. 13:48-14:5.  eBay relies on the use of the term "the invention" to support the conclusion that the inventor clearly intended to limit the claims, that is, "the invention," to a communication protocol that is optimized for sending single characters.  The Court disagrees.

While the inventor's use of "the invention" in the specification often evidences an intent to limit the claims to the description of "the invention," *see Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010); *Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006), it is not always dispositive.  The Federal Circuit has found that the use of "this invention" is not so limiting "where the references to a certain limitation as being the 'invention' are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent."  *See Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136 (Fed. Cir. 2011) (citing cases).  It is not so limiting here.

First, as the Court discussed with respect to asynchronous connection, the inventor expressly explained that the "detailed description" that follows the specification is "an embodiment of the present invention" referred to as QuestObjects.  *See* '529 Patent Col. 9:49-56, '639 Patent Col. 6:18-21.  Further, at the end of the detailed description the inventor disclaimed that "[t]he foregoing description of the present invention has been provided for purposes of illustration and description.  It is not intended to be exhaustive or to limit the invention to the precise forms disclosed."  '639 Patent Col. 40:56-59, '529 Patent Col. 31:33-45.  This expressed disclaimer indicates that the inventor's use of "present invention" was, in

12

1    fact, referring to an embodiment of the present invention (the QuestObjects embodiment)

2    rather than what is claimed.

3           eBay's reliance on *Wireless Agents LLC v. Sony Ericsson Mobile Communications AB*,

4    189 Fed. Appx. 965, 967 (Fed. Cir.  2006), for its argument that the disclaimer is meaningless

5    is unavailing.  In *Wireless Agents* the ordinary meaning of the disputed term was not readily

6    apparent from the face of the claim and there was no common dictionary definition of the

7    term.  *Id.*  Here, in contrast, "asynchronous connection" has an ordinary meaning to one

8    skilled in the art.  eBay wants the Court to deviate from that ordinary meaning on the ground

9    that the patentee acted as its own lexicographer in the specification, even though the patentee

10   expressly disclaimed such an intention.  eBay does not cite any authority for that legal

11   proposition.

12          Second, the sentence immediately preceding the sentence upon which eBay rests its

13   entire construction instructs that "the terms 'client' and 'server' are used herein to reflect a

14   specific embodiment of the invention."  '529 Patent Col. 11:48-50; '639 Patent Col. 13:51-58.

15   In the next sentence, the sentence with the "optimizing single character" language, server and

16   client are capitalized to further indicate that the inventor is describing a specific embodiment

17   rather than the limitations of the claimed inventions.

18          Third, eBay does not identify any other language in the patent or anything in the

19   prosecution history that suggests that the written description's one reference to optimizing

20   single characters is a limitation of the claims.

21          Finally, eBay's construction is inconsistent with the ordinary meaning of the claims.

22   At oral argument eBay opined that "optimized" means that the client can send single

23   characters to the server and the server then relates each sent single character to the previously

24   sent single characters and responds with a list of relevant responses.  (Dkt. No. 50 at 55:1-

25   57:13.)  In other words, the communication protocol must be able to "glue" individually sent

26   characters together at the server.  The claims, however, require the client system "to send via

27   the network . . . a lengthening string composed of a plurality of consecutively input

28   characters."  '529 Patent Col. 31:52-54; *id*. Col. 39:31-38 ("a communication protocol" which

13

United States District Court
Northern District of California

allows the client "to send, as part of the same session, a plurality of queries from a user to query the server for content, wherein each one of the plurality of queries are consecutive and together form an increasingly focused query string"); '639 Patent, Col. 41:33-36 ("while the increasingly lengthening query string is being entered by the user at the input field at the client"). The client system is not sending a "lengthening string" if it is only sending one character at time. The server may be creating a lengthening string when it relates the single characters to each other, but the client system is not sending a lengthening string. Thus, eBay's proposed construction contradicts the claims' language.

For all of these reasons the Court concludes that the specification does not clearly indicate an intention to limit "communication protocol" to a protocol that is optimized for sending single characters. The Court thus adopts the following construction for "communication protocol: "A set of rules that enable computers to exchange messages with each other."

## B. The Cache Terms

### 1. Content-based cache/query and result cache

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '529 Patent Claims: 1, 44<br><br>'639 Patent Claims: 1, 13; | "content-based cache/query and result cache" | A cache which stores previous queries and content or other information returned in response to the previous queries. | A persistent store of queries and corresponding result sets executed by a content engine for a specific content channel. |

Claim 1 of the '529 Patent comprises "a content-based cache, at the server system, which stores previous queries and corresponding result sets previously executed by the system, and which includes within its result sets content or other information previously retrieved from the server system or one more content sources in response to the previous queries." '529 Patent Col. 31:59-64, Col. 44:22-27; *see also* '639 Patent Col. 41:11-13 ("a query and result cache that stores one or more query strings previously communicated from the clients, or content results previously returned from the server"). The parties agree that the terms "content-based cache," "query cache," and "result cache" have the same meaning.

14

eBay's proposed construction includes a limitation not found in the ordinary meaning of the claims; namely, that the content-based cache is executed by a "content engine for a specific content channel." It takes its proposed construction directly from the glossary section of the '529 Patent specification. The glossary defines "content-based Cache" as "a persistent store of Queries and corresponding Result Sets executed by a Content Engine for a specific Content Channel." '529 Patent Col. 10:17-19. Once again eBay is arguing that the patentee operated as its own lexicographer and that the Court must apply the definition of content-based cache set forth in the glossary.

The glossary, however, describes the QuestObjects system, the preferred embodiment of the invention. '529 Patent Col. 9:49-56. eBay's contention that "[n]othing in the glossary for the Patent limits the defined terms to preferred embodiments" is belied by the language of the paragraph which precedes the glossary: "[o]ther terms used to describe the QuestObjects system in detail can be found in the glossary below." '529 Patent Col. 9:55-56. The glossary is unambiguously describing the preferred embodiment; indeed, the glossary includes terms such as "content engine" which are not even used in the claims, further demonstrating that the patentee is using the glossary in connection with the preferred embodiment.

The Federal Circuit has repeatedly cautioned courts against reading limitations into the claims based on the preferred embodiment: "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. The court has also "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004); *see also MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1255 (Fed. Cir. 2012) ("limitations from parts of the written description, such as the details of the preferred embodiment, cannot be read into the claims absent a clear intention by the patentee to do so").

The Court is mindful of this caution and declines to limit the construction of the disputed terms to a definition which the patentee clearly used to describe one particular

embodiment.  MasterObjects' proposed construction is taken, at least in part, directly from the language of the claim itself and is thus more availing; however, MasterObjects' proposed language omits considerable detail from the claim language and replaces the term "corresponding results set" with a broader term: "content."  Although the content may be part of the corresponding results set, the term should be construed in accordance with the plain language of the claim which speaks in terms of "previous queries and corresponding result sets" which includes "content" and "other information," but is not so limited.

Accordingly, the Court finds that the terms "content-based cache/query and result cache" should be construed as follows:  "A cache which stores previous queries and corresponding result sets or other information retrieved in response to previous queries."

## C.  Content Source

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '529: 1[2] | "content source(s)" | A server computer that provides information. | A data source on a server computer that performs string-based queries and provides data to the system. |

Claim 1 of the '529 Patent recites a server system comprising

a content-based cache, at the server system, which stores previous queries and corresponding result sets previously executed by the system, and which includes within its result sets content or other information previously retrieved from the server system or one or more **content sources** in response to the previous queries.

MasterObjects contends that its proposed definition is a simple and common-sense construction for the term "content source."  eBay counters that Court should again look to the glossary, and, in particular, the definition of "content source" in the glossary of the '639 Patent.  The '639 glossary —the same glossary which by its terms states that it is defining the

---

[2] Although the Joint Claim Construction Statement (Dkt. No. 33) and MasterObjects Opening Claim Construction Brief (Dkt. No. 37) only identify this term in relation to Claim 1 of the '529 Patent, eBay's Responsive Claim Construction Brief (Dkt. No. 43) also lists Claims 44 and 45 of the '529 Patent and Claims 1 and 13 of the '639 Patent.  For purposes of this Order, the Court construes the term as used in Claim 1 of the '529 Patent in accordance with the Joint Claims Construction Statement.

QuestObjects embodiment ('639 Patent Col. 6:25-27)—defines "content source" as "[a] server computer that provides the data that is accessed by the QuestObjects system. The content source makes its data available through a content engine." '639 Patent Col.10:22-25. eBay then looks to the definition of "content engine" in the '639 Patent glossary and imports that definition into its proposed construction of "content source" in the '529 Patent. "Content engine" in the '639 Patent is defined as "a third-party application that runs on the content source that is capable of performing string-based queries and returning string formatted answers to the QuestObjects system." '639 Patent Col. 10:13-15. The glossary to the '529 Patent also includes a definition of content engine, although it is different from that in the '639 Patent: "[a] dynamic data source that provides data to a Content Channel by accessing its own database or by querying other information systems." *Compare* '529 Patent Col. 10:24-26. *with* '639 Patent Col. 10:12-15.

The Court is unpersuaded by eBay's argument. First, as with cache-based content, eBay's construction imports a specific limitation from a glossary which is expressly limited to the preferred embodiment. Second, the '529 Patent—the patent in which the disputed claim appears—does not define content source; eBay is seeking the definition used for a preferred embodiment in a patent that was filed after the '529 Patent (although it issued first). eBay does not cite any case that suggests the Court can take a definition related to a preferred embodiment in a later-filed patent and then import that limitation into the parent patent. Third, nothing in the language of the claims, elsewhere in the specification, or the prosecution history, compels eBay's construction and, in particular, the limitation that the content source itself perform string-based queries.

eBay's assertion that identical terms in related patents must mean the same thing is unhelpful. The first question is whether the terms as defined in the glossary of either patent are merely describing a preferred embodiment or are limiting the ordinary meaning of the patents' claims. The express language of the specification indicates that the glossary is merely defining the preferred embodiment. Further, that "content engine" does not appear in any of the claims is further evidence that the glossary is defining the preferred embodiment

United States District Court

Northern District of California

rather than also defining the claims.  The differing definitions of "content engine" in the specifications of the '529 and '639 are also consistent with the glossary terms being limited to the QuestObjects embodiment.

In sum, Claim 1 of the '529 Patent includes multiple references to "content sources" which supply content or information in response to queries as does the server system.  *See* '529 Patent Col. 31:60-64, Col. 32:17-23.  Given the absence of any language suggesting a "string-based queries" limitation, the Court does not see a basis to include one.  Accordingly, "content source" is construed as "a data source on a server computer that provides data to the system."

**D.  Session**

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|--------|-----------|--------------------------------------|------------------------------|
| '639: 1, 13<br>'529: 1, 44 | "session" | A related set of communications between a client and a server as the user enters a particular search query by entering consecutive characters. | A state maintained between a client and a single server in which the server recognizes when subsequent requests originate from the same user such that information about the user's past queries is required to process the current request. |

The asserted claims require an asynchronous connection between a client and a server which allows the client to send queries to the server "within a session" or "as part of a session."  eBay's proposed construction is not based on the ordinary meaning of "session" to one skilled in the art.  Nor does eBay contend that "session" as used in the asserted claims is ambiguous.  Instead, as with the other disputes, eBay argues that in the specification the patentee gave "session" a special meaning which confines the claims.  In particular, eBay's proposed construction of "session" requires that a "state" be "maintained" between a client and a "single server."  Further, data from the user's past queries is "required" to process the user's current request.

eBay relies on the following specification statement: "In accordance with one embodiment of the invention the system is session-based, in that the server knows or

18

recognizes when subsequent requests originate at the same Client.  Thus, in responding to a character the Server receives from a Client it can use the history of data that has been sent to and from the current user."  '529 Patent Col. 12:9-14.  Here, the patentee expressly states that it is describing an embodiment; it is not specially defining the claims. The Court cannot find from this language a clear intent by the patentee to read these limitations into the claims.  *See MySpace, Inc.*, 672 F.3d at 1255.  Moreover, this language does not *require* information about a user's past queries, as does eBay's proposed construction; the patentee merely states that in one embodiment the server *can* use the history of data previously sent.  Indeed, the summary of the invention expressly states that "no history of use needs to be built on the client before data is available."  '529 Patent Col. 6:61-62.  Nor does the specification limit "session" to a single server.  The asserted claims of the '529 Patent, in fact, discuss a session between a client "system" and a server "system."  *See, e.g.*, '529 Patent Col. 31:53-54.

Next, eBay contends that the prosecution history mandates its proposed limitations. eBay argues that in distinguishing Purcell, MasterObjects disclaimed the possibility of using multiple servers within a session.  The Court disagrees.  MasterObjects distinguished Purcell on the ground that it lacked an asynchronous connection:

> Applicant respectfully submits that Purcell does not disclose a *session-based* environment, wherein a communication protocol provides an *asynchronous session-based connection* between the client system and the server system, and allows the client to send, as part of a session between that client system and that server system, a plurality of consecutively input strings to query the server system for content.  Instead, Purcell appears to disclose a traditional synchronous means of requesting information, and not one that uses a session, as presently defined.

Dkt. No. 45-1 at 14 (emphasis in original).  MasterObjects further stated that "Purcell does not teach that an increasingly focused query string may be applied to a server." *Id.*  MasterObjects never clearly and unmistakably disavowed using more than one server within a session in distinguishing Purcell.  *See Elbex Video Ltd.*, 508 F.3d at 1371.

The Court similarly finds that MasterObjects did not clearly and unmistakably define "session" as requiring data from a user's past queries in order to process a current request in the course of distinguishing Spaey.  It did distinguish Spaey as being session-less, that is, there is no back and forth between the user and the server such that the server asynchronously returns the increasingly matching results while the user is inputting additional characters.  (Dkt. No. 43-10 at 14-15.)  And in doing so MasterObjects noted that Spaey does not require information about past requests to process the current request.  But that is far from unequivocally stating that "session" as used in the patents-in-suit requires information about past requests to process current requests.  *See Omega Eng'g, Inc.*, 334 F.3d at 1324.

The Court is also not persuaded that in describing the advantages of the invention MasterObjects limited "session" to communication between a single client and a single server.  MasterObjects did explain that the server's ability to use the history of data previously sent by the client is an advantage (Dkt. No. 45-1 at 12), but such explanation is entirely consistent with the specification's description of such function as an embodiment of the invention.  The invention claimed can be applied to have such functionality, but it is not required by the claims.

While neither the specification nor the prosecution history requires the limitations urged by eBay, they do emphasize the relationship between the client and server and the server's reliance on a content-based cache (i.e., prior search history) to provide responses. *See e.g.,* '639 Patent Col. 41:23-31 ("wherein the server receives the plurality of queries from the requesting client" and "automatically matches the increasingly lengthening query string against the content of the query and result cache"); '639 Patent Col. 42:26-32 ("allows each client to communicate…as part of session, a plurality of consecutive query strings to query the server for content; and providing access to a query and result cache that stores one or more query strings previously communicated from the clients, or content results previously returned from the server"); '529 Patent Col. 32:17-22 ("the server object in response to receiving each of the corresponding consecutive queries…automatically uses the lengthening

20

string to query and retrieve content information from the content-based cache at the server system or from one of more content sources"); *id.* Col. 39:45-47 (similarly compares the query string to the content-based cache); *id.* Col. 40:13-15 (same).

MasterObjects' proposed construction, "a related set of communications between a client and a server as the user enters a particular search query by entering consecutive characters," captures this back and forth between the client and server, but it omits a crucial component of a session; namely, that of the *relationship* between the server and the client. A session is not just about the communications—the framework of the communications is a crucial component.

Accordingly, the Court finds that the construction of "session" tentatively proposed by Judge White in *MasterObjects v. Yahoo!,* No. 11-cv-2539-JSW (N.D. Cal. Jul, 19, 2012, Dkt. No. 49) strikes the proper balance. The Court construes "session" as "a relationship maintained between a client and a server in which the server recognizes when the user enters a particular search query by entering consecutive characters."

**E.  Server and Client Object**

| Claims | Claim Term | MasterObjects' Proposed Construction | eBay's Proposed Construction |
|---|---|---|---|
| '529: 1 | "server object" | A software component or function located on a server. | A computer program module executing on the server that maintains the state between the client and the server. |
| '529: 1, 9 | "client object" | A software component or function located on a client. | A computer program module executing on the client that maintains the state between the client and the server. |

The fundamental difference in the parties' constructions of these terms is eBay's inclusion of the requirement that the computer program "maintains the state between the client and the server."  eBay contends, once again, that the patentee acted as its own lexicographer and that this construction is supported by the specification references to the "server object" and "client object" synchronizing the data at the client with the data at the server.  *See* '529 Patent Col. 8:36-41 ("[t]he present invention provides a standardized way to

United States District Court
Northern District of California

immediately synchronize the data entered or displayed on a client system with the data on a server system").  However, the only reference to either "maintains" or "state" is found in the description of the preferred embodiment.  Specifically, the written description states in the middle of a long paragraph:  "In accordance with the invention, any event or change that happens in either [Client Quester or Sever Quester] is automatically duplicated to the other so that their states are always equal." '529 Patent Col. 13:31-33.  The context of this sentence, however, demonstrates that "in accordance with the invention" refers to the QuestObjects preferred embodiment and not the invention claimed.  *See, e.g.,* '529 Patent Col. 11:48-50 ("The terms 'client' and 'server' are used herein to reflect a specific embodiment of the invention").  As explained above, the inventor's use of the term "the invention" does not necessarily mean he was describing the patented invention as opposed to an embodiment.  *See Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136 (Fed. Cir. 2011).

Masterobjects' proposed construction is also flawed as it omits any language that addresses the relationship between the "server object" and the "client object."  The claims themselves plainly refer to the two in relation to the other.  *See, e.g.,* '529 Patent Col. 31:65-67 ("a client object…while each of the consecutive additional characters are being received as input, transmits via the network to a server object at the server system on or more corresponding consecutive queries, within the session between the client system and the server system, to retrieve content from the server system"); *id.* Col. 32:13-16 ("a server object, in communication with the server system, and with the client object").

Accordingly, the Court adopts the following construction for the term "server object:" "A software component or function located on a server performing in a relationship with a client object."  The construction of a "client object" mirrors this language: "A software component or function located on a client performing in a relationship with a server object."

//

//

//

//

1

**CONCLUSION**

2      The Court construes the disputed claim terms of the patents-in-suit as set forth above.

3 The Court will hold a further case management conference on Thursday, May 2, 2013 at 1:30

4 p.m. in Courtroom F, 450 Golden Gate Avenue, San Francisco, California.

5      **IT IS SO ORDERED.**

6 Dated:  March 28, 2013

7      _____
       JACQUELINE SCOTT CORLEY

8      UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California