IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASTEROBJECTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EBAY, INC., <br><br> Defendant. | Case No.: 3:12-cv-680 JSC <br><br> **ORDER RE: DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. Nos. 36 & 57)** |

Plaintiff MasterObjects, Inc. alleges infringement by Defendant eBay, Inc. of two patents relating to systems and methods for asynchronously returning search information from a server to a client within a session. Now pending before the Court is eBay's renewed Motion for Partial Summary Judgment of invalidity for indefiniteness (Dkt. No. 57). The Court previously denied the motion without prejudice to the parties' briefing eBay's argument regarding claim differentiation which had been raised for the first time on reply. Having considered the parties' supplemental briefing and having had the benefit of oral argument on July 2, 2013, the Court DENIES the motion.

## BACKGROUND

MasterObjects alleges eBay infringes U.S. Patent Nos. 8,060,639, "System and Method for Utilizing Asynchronous Client Server Communication Objects (the "'639 Patent") and, 8,112,529, "System and Method for Asynchronous Client Server Session Communication," (the "'529 Patent"). The invention disclosed in the '639 Patent relates to an asynchronous information search and retrieval system to be utilized for "interactive database searching, data entry, online purchasing, and other applications." '639 Patent Col. 1:38-40. The invention disclosed in the '539 Patent relates to a "session-based bi-directional multi-tier client-server asynchronous search and retrieval system." '539 Patent Col. 1:17-20. A stated goal of the inventions was to create a new search paradigm to provide instant search results character by character as the user types.

Prior to any expert discovery and shortly before MasterObjects' claim construction brief was due, eBay filed a motion for partial summary judgment based on indefiniteness. eBay contends claims 44 and 45 of the '529 Patent and claims 1 and 13 of the '639 Patent are invalid because the terms "increasingly relevant content" and "increasingly appropriate content or search criteria" are indefinite. In response, MasterObjects contended, among other things, that "increasingly relevant" and "increasingly appropriate" should be construed as "increasingly matching." On reply, eBay argued that such a construction is barred by the doctrine of claim differentiation. Because this argument was raised for the first time on reply, the Court denied the motion without prejudice, but granted the parties leave to file supplemental briefing on the subject of claim differentiation.

Meanwhile, the Court issued its claim construction Order on March 28, 2013. (Dkt. No. 51.) The parties did not ask the Court to construe the terms "increasingly relevant," "increasingly appropriate," or "increasingly matching."

## LEGAL STANDARD

As in any other civil action, summary judgment is proper in a patent infringement action when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

2

Fed.R.Civ.P. 56(c); *see also Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *see also Raytheon Co. v. Indigo Systems Corp.*, 688 F.3d 1311, 1315 (Fed. Cir. 2012) (stating that the Federal Circuit reviews a district court's summary judgment ruling under the law of the regional circuit). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There can be "no genuine issue as to any material fact" when the moving party shows "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendant, as the moving party, has the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing that Plaintiff cannot produce evidence sufficient to satisfy her burden of proof at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once Defendant meets that burden, Plaintiff, as the non-moving party, must show that a material factual dispute exists. *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Allegations alone are not sufficient to meet Plaintiff's burden; instead, Plaintiff must submit admissible evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

## DISCUSSION

eBay moves for partial summary judgment on claims 44 and 45 of the '529 Patent and claims 1 and 13 of the '639 Patent on grounds of indefiniteness as to the terms "increasingly relevant content" and "increasingly appropriate content or search criteria." In particular, claims 44 and 45 describe the process wherein "while the user is entering the one or more additional characters, [the server] suggests a set of increasingly appropriate content or search criteria from the plurality of databases, to the client, for further use by the client within the same session." *See* '529 Patent Cols. 39:48-52 & 40:17-20. Claims 1 and 13 describe how the server "asynchronously returns, while the increasingly lengthening query string is being

3

1  entered by the user at the input field at the client, increasingly relevant content to the client."
2  *See* '630 Patent Cols. 41:33-35 & 42:51-54.

3  In its earlier motion for summary judgment, eBay argued that the terms "increasingly relevant" and "increasingly appropriate" are indefinite because there is no "objective standard…provided in order to allow the public to determine the scope of the claimed invention" in accordance with the Federal Circuit's decision in *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).   In response, MasterObjects suggested that the terms "increasingly relevant" and "increasingly appropriate" are synonymous with "increasingly matching" which is used in claim 1 of the '529 Patent such that the Court could construe "relevant" and "appropriate" as "matching."  Although this raised claim differentiation issues, these had not been fully briefed by the parties.  Thus, the Court denied the motion without prejudice because on the present record eBay had failed to establish by "clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art."  *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010).  The parties thereafter submitted supplemental briefing regarding the claim differentiation issues.

### A. The Indefiniteness Analysis

The requirement that claims be sufficiently "definite" is set forth in 35 U.S.C. § 112, ¶ 2, which provides that, "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  "The definiteness inquiry focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification."  *Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001).  To "accord respect to the statutory presumption of patent validity," a claim should be found indefinite "only if reasonable efforts at claim construction prove futile."  *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  A claim is not indefinite simply because its meaning is not ascertainable from the

face of the claims. *Amgen Inc. v. Hoechst Marion Roussel, Inc*., 314 F.3d 1311, 1342 (Fed. Cir. 2003). "A claim will be found to be indefinite only if it is insolubly ambiguous, and no narrowing construction can properly be adopted." *Exxon Research & Eng'g Co*., 265 F.3d at 1375. Indefiniteness is established only by "clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Haemonetics Corp*., 607 F.3d at 783.

eBay contends that "increasingly appropriate" and "increasingly relevant" cannot be construed the same as "increasingly matching" for a number of reasons. First, eBay argues that the words do not have the same meaning; matching means something narrower than the broad subjective terms "appropriate" and "relevant." Second, based on amendments made to the claim language during the patent prosecution phase, eBay contends that it would be inconsistent to construe "appropriate" or "relevant" as "matching." Third, to construe "increasingly appropriate" and "increasingly relevant" as "increasingly matching" would violate the doctrine of claim differentiation.

### 1. The Claim Language and Prosecution History

The starting point for the Court's analysis is the claim language. *Biosig Instruments, Inc. v. Nautilus, Inc*., 715 F.3d 891, 898 (Fed. Cir. Apr. 26, 2013) (in determining indefiniteness the courts "primarily consider the intrinsic evidence consisting of the claim language, the specification, and the prosecution history") (internal citation omitted). The question is whether one of ordinary skill in the art would conclude that "increasingly relevant" and "increasingly appropriate" have the same meaning as "increasingly matching" based on the claim language. The Court concludes that one would.

The claim language of the '529 Patent references "matching" (or "to match") 50 times; similarly, the claim language of the '639 Patent references "matching" (or "to match") 11 times. In contrast, "appropriate" is used six times in the claim language of the '529 Patent and one time in the claim language of the '639 Patent, and "relevant" is used only once in the specification of the '529 Patent and six times in the entire '639 Patent. While

5

this dichotomy might suggest that the few instances in which MasterObjects used "relevant" or "appropriate" instead of "matching" is significant for claim construction purposes, a close examination of the claims' language discloses that the terms are used interchangeably.

In the '639 Patent, claim 1 describes a system for enabling searches of content at a server. *See* '639 Patent Col. 41:1-36. The claim describes, in part, the process by which a user inputs a search query which is transmitted by the client to the server "to retrieve content from the server *matching* or *related to* the plurality of consecutive query strings." '639 Patent Col. 41:18-20 (emphasis added). The server, as it receives a plurality of queries and one or more additional characters as they are entered into the input field, "automatically matches the increasingly lengthening query string initially by matching the query string against the content of the query and result cache, and subsequently by matching the query string against other content available to the server." '639 Patent, 41:23-33. The server then "asynchronously returns, while the increasingly lengthening query string is being entered by the user at the input field at the client, increasingly *relevant* content to the client." '639 Patent Col. 41:33-35 (emphasis added). Claim 13 contains similar language. *Compare* '639 Patent Col. 42:37-39 ("retrieve content from the server matching or related to the plurality of consecutive query strings" *with* Col. 42:51-54 ("asynchronously returns…increasingly relevant content to the client"). All of these elements refer to the content ultimately returned to the user from the server. The first reference—matching or related to—is expressly describing "matching" as the same as "related to," much as lawyers will often say "null and void," although each term has the same meaning. Thus, the language of claims 1 and 13 discloses a process by which the information inputted is matched against the content on the server to return content which matches the ever changing search query. *See Philips*, 415 F.3d at 1314 (stating that the claims themselves provide substantial guidance as to the meaning of particular claim terms). Based on the claim language, one of ordinary skill in the art would conclude that "match" and "relevant" are used synonymously in the '639 Patent.

In the '529 Patent, the use of "increasingly appropriate" in claims 44 and 45 is more striking. Unlike the majority of other claims which reference "matching," claims 44 and 45

6

talk only in terms of "increasingly focused query string[s]" and the process by which "a set of increasingly appropriate content" is suggested to the user. *Compare* '529 Patent Col. 32:29 (claim 1: "increasingly matches"); Col. 32:57-58 (claim 6: "increasingly matching results"); Col. 33:65-66 (claim 22: "the matching content returned by the server"); Col. 34:21 (claim 24: "retrieves matching content"); Col. 35:31-32 (claim 33: "increasingly matches the lengthening query string"); Col. 36:39 (claim 34: "increasingly matches the lengthening query string"); Col. 37:27 (claim 40: "increasingly matches"); Col. 38:48 (claim 42: "increasingly matches"), *with* Col. 39:49 (claim 44: "increasingly appropriate content"); Col. 40:17-18 (claim 45: "increasingly appropriate content").

Both claims 44 and 45 describe the system or method of suggesting data as a response to client requests from the server side where the server "while the user is entering one or more additional characters, suggests a set of increasingly appropriate content or search criteria from the plurality of databases, to the client." '529 Patent Col. 39:42-51; *see also id*. at Col. 40:16-20 (Claim 45). Claim 1 similarly references the process whereby the server object "asynchronously returns, while the additional characters are being input and the corresponding consecutive queries are being transmitted and the lengthening string is being modified during the session, consecutive responses containing content information which increasingly matches the lengthening string, to the client object for immediate use by the client system." '529 Patent Col. 32:24-33. Thus, all three claims refer to the process whereby the user inputs data which is compared to data on the server and then information is returned to the user; however, in claims 44 and 45 the returned content is described as "increasingly appropriate" and in claim 1 it is described as "increasingly match[ing]." The question is whether one skilled in the art would view the drafters' use of different language as significant. eBay points to nothing in the claims themselves—other than the different words—that suggests that one would.

The language of the specification is consistent with "relevant" and "appropriate" meaning "matching." Both the abstract and the detailed description refer to the content returned as appropriate—not matching. '529 Patent Col. Abs. 34-35 & 8:32-33 On the other

7

hand, the QuestObjects system, the primary embodiment described in the Patent, speaks primarily in terms of matching content: "allowing the Server Quester to match and filter new Queries" ('529 Patent Col. 10:36-37); "a string-matching pattern" ('529 Patent Col. 10:39); "auto-complete match for the characters entered" ('529 Patent Col. 16:38-39); the "QuestObjects Service may automatically 'push' updated information matching the previous queries ('529 Patent Col. 19:9-11); "matches the first string" ('529 Patent, Col. 19:21-22); and "QuestObjects Result Set with an identifier that matches" ('529 Patent Col. 24:48-49). The sole reference to "appropriate" as a characteristic of content with respect to the QuestObjects system is "[a]fter an appropriate Result Set is retrieved, the Service will return it to the Client." ('529 Patent Col. 19:4-5.) This use of the terms suggests that MasterObjects used these terms interchangeably.

eBay's arguments to the contrary are unpersuasive. First, eBay asserts that the content returned in claim 1 is in fact distinguishable from the content returned in claims 44 and 45 because claim 1 speaks in terms of content returned in response to a lengthening query string and claims 44 and 45 speak in terms of content returned based on the users' input of one or more additional characters. This is a distinction without a difference. The Court rejected a similar argument in its Claim Construction Order. eBay had argued that "communication protocol" should be limited to "[a] set of rules that enable computers to exchange messages with each other and that is optimized for sending single characters from a client to a server and lists of strings from the server to the client." (Dkt. No. 51 at p. 11.) The Court found that the single character limitation was not supported by language elsewhere in the specification and was inconsistent with the ordinary meaning of the claims. (*Id.* at 13:21-14:8.) As with eBay's proposed limitation on claim construction, eBay's limitation of claims 44 and 45 to content returned when a user inputs one or more characters as opposed to when a user inputs a lengthening query string is not supported by the language of the claims or the specification. The Court cannot "turn a blind eye to the functional aspects of the claim" by viewing the term at issue "in a vacuum." *Biosig Instruments, Inc*, 715 F.3d at 904.

8

Second, eBay's argument that claim 1 (which uses matching) is directed at non-user applications, whereas all claims which use the subjective terms "appropriate" or "relevant" are directed at "human users" is unavailing. eBay has failed to provide any citations to the Patent in making such a sweeping argument, perhaps because the Patent itself suggests the contrary. Indeed, the specification states that the non-user embodiment of Claim 1 via the control system of a power plant is just *one example* of how clients using the system are not restricted to programs with a user interface, but there are several other examples provided which do involve a client interface. *See* '529 Patent Col. 11:62-12:21.

A review of the prosecution history does not suggest a contrary conclusion. The patent prosecution history for the '529 Patent lasted eleven years. Over the course of the back and forth between the United States Patent and Trademark Office ("PTO") and MasterObjects, the language of claim 1 of the '529 Patent morphed from "increasingly appropriate" to "increasingly relevant" to the language which ultimately appears in claim 1: "increasingly matching." MasterObjects contends that these changes were not deliberate attempts to overcome some sort of prosecution hurdle, but rather, that the changes were made because MasterObjects views the words as synonyms.

In support of this contention, MasterObjects refers to statements it made to the PTO in response to the rejection of the '529 Patent application on March 9, 2006. MasterObjects amended certain claims, including claim 1, to change the term from "increasingly relevant" to "increasingly matching." In the remarks portion of the response, MasterObjects discussed the asynchronous nature of the interaction between the user and server in claim 1 and described the information relayed from the server to the client as feedback: "immediate feedback may be in the form of e.g. providing preliminary search results, or suggesting a more appropriate, or a better matching content to the end-user." (Dkt. No. 62-6, p. 14.) This statement certainly suggests that MasterObjects used the terms interchangeably, especially in light of the contemporaneous amendment of the language from "relevant" to "matching." A year after it made this statement, MasterObjects added the at-issue claims 44 and 45 with the "increasingly appropriate" language. Although it is curious that MasterObjects did not track

9

1   the "increasingly matching" language of claim 1 and the related claims, the Court cannot
2   hold as a matter of law that MasterObjects' decision to use different language alone
3   evidences an intent to limit the claims rather than inartful drafting. *See, e.g.*, *Exxon*, 265
4   F.3d at 1375.

5        eBay contends that this prosecution history compels the opposite conclusion, that is,
6   that MasterObjects changed the language because "appropriate" means something different
7   from "relevant" which means something different from "matching." eBay, however, does
8   not address the statement above, which demonstrates that MasterObjects was using
9   "relevant" interchangeably with "matching." Moreover, there is nothing in the claims
10  themselves, or any statement made by the PTO in the prosecution history, which suggests
11  that MasterObjects changed the language for a reason related to patentability.

12       eBay also appears to be making a prosecution history estoppel argument.
13  "[P]rosecution history estoppel … prevent[s] recapture of subject matter surrendered during
14  prosecution of the patent" and places the burden on the patentee to establish that the reason
15  for the amendment was unrelated to patentability. *See, e.g.*, *Festo Corp. v. Shoketsu Kinzoku*
16  *Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1377 (Fed. Cir. 2007) (internal citations omitted).
17  eBay contends that as a result of the changes in terms it is MasterObjects' burden to establish
18  that the amendments were unrelated to patentability.

19       eBay's assertion misses a step. "The first question in a prosecution history estoppel
20  inquiry is whether an amendment filed in the Patent and Trademark Office [] has narrowed
21  the literal scope of a claim. If the amendment was not narrowing, then prosecution history
22  estoppel does not apply." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344
23  F.3d 1359, 1366 (Fed. Cir. 2003) (internal citation omitted); *see also Pioneer Magnetics, Inc.*
24  *v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2006). The burden is on the accused
25  infringer—here, eBay—to show that the amendment was narrowing. *Festo Corp.*, 344 F.3d
26  at 1366. eBay has not met this burden. MasterObjects contends that the change in words
27  was not narrowing, but rather, the replacement of one synonym for another, and the
28  statement MasterObjects made in response to the PTO's rejection of its application in

10

1 September 2006, as well as the claim language itself, supports this assertion. In response, eBay repeatedly reiterates the principle of prosecution history estoppel that amendments in claim language are legally significant regardless of whether the amendments were made of the applicant's own volition or at the insistence of the PTO. But this response does not demonstrate that the amendments were narrowing, as is eBay's initial burden. Because eBay has not done so, prosecution history estoppel does not apply.

### 2. Clam Differentiation

eBay also contends that under the doctrine of claim differentiation "appropriate" and "relevant" must be construed to mean something different from "matching." Under the doctrine of claim differentiation "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987); *see also Seachange Int'l Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368-69 (Fed. Cir. 2005) (explaining that claim differentiation stems from "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope") (internal quotation marks and citation omitted). The doctrine applies when the absence of a difference in meaning and scope of different terms would make a claim superfluous. *See, e.g, Anderson Corp. v. Fiber Composites,* LLC, 474 F.3d 1361, 1369 (Fed. Cir. 2007) ("To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant") (*quoting Tandon Corp.*, 831 F.2d at 1023). While "at its strongest where the limitation sought to be 'read into' an independent claim already appears in a dependent claim, there is still a presumption that two independent claims have different scope when different words or phrases are used in those claims." *Seachange Int'l Inc.*, 413 F.3d at 1369 (internal quotation marks and citation omitted); *see also Curtiss-Wright Flow Control Corp. v. Velan, Inc*., 438 F.3d 1374, 1380 (Fed. Cir. 2006) (noting that the Federal Circuit "has characterized claim differentiation more generally, i.e., as the presumption that each claim in a patent as a different scope"). eBay contends that because MasterObjects used different

11

terms—relevant, appropriate, matching—in different claims, the different *terms* must be presumed to have a different meaning, a presumption which MasterObjects has not overcome.

The Court disagrees that claim differentiation applies. First, "claim drafters can [] use different terms to define the exact same subject matter. Indeed [the Federal Circuit] has acknowledged that two claims with different terminology can define the exact same subject matter." *Curtiss-Wright Flow Control Corp.*, 438 F.3d at 1380 ( citing *Tandon Corp.*, 831 F.2d at 1023); *Seachange Int'l, Inc.*, 413 F.3d at 1369 ("[C]laims that are written in different words may ultimately cover substantially the same subject matter") (internal quotation marks and citation omitted); *Hormone Research Found. v. Genentech, Inc.*, 904 F.2d 1558, 1567 n. 15 (Fed. Cir.1990) (finding that inventor used two different terms synonymously). Thus, the use of different terms is not in and of itself dispositive.

Second, as discussed above, the manner in which the terms are used suggests that MasterObjects used the different terms interchangeably. The '639 Patent uses the term "matching" to refer to the process by which content is retrieved "from the server matching or related to the plurality of consecutive query strings;" whereas the term "relevant" is generally used to refer to the process by which increasingly relevant information is asynchronously returned to the client as the increasingly lengthening query string is being entered. '639 Patent Col. 41:18-19 & Col. 41:33-35. Likewise, claim 1 of the '529 Patent refers to the process whereby "content information which increasingly matches the lengthening string" is returned, and claims 44 and 45 describe the process by which the server "suggests a set of increasingly appropriate content." '529 Patent Col. 32:29-30 & Col. 39:48-50. All of these processes refer to the return of content from the server to the client. The doctrine of claim differentiation would nonetheless preclude the Court from construing the descriptor of that content—"matching" versus "appropriate" or "relevant"—as having the same meaning if doing so would render the claims which use "appropriate" or "relevant" superfluous to other independent claims. *See Anderson Corp.*, 474 F.3d at 1369.

12

Here, however, claims 44 and 45 of the '529 Patent claim different subject matter from the other claims, including claim 1, even if "appropriate" is construed to mean "matching." For example, claim 44 of the '529 Patent references "a server configured to receive requests from a plurality of clients for content," "an interface to a plurality of databases or data sources of content information coupled to said server," and a "user." Claim 45 is the parallel method claim to claim 44's system claim. In contrast, claim 1 does not describe the server or interface and does not refer to a user. The three claims describe different aspects of the search and retrieval system. Likewise, in the '639 Patent, MasterObjects uses the words "matching" and "relevant" within both claims 1 and 13. The terms are both used to describe the content that is returned when the user inputs the increasingly lengthening query string. Construing "relevant" as "matching" within this context fails to raise a claim differentiation issue because as with the '529 Patent the claims describe different aspects of the system.

In a related argument, eBay contends that the language of dependent claims 12 and 13 of the '529 Patent distinguishes the term "appropriate" from "matching." eBay argues that because the dependent claims add limitations to claim 1 regarding when "appropriate" content is returned, the term "matching" in claim 1 must have a different meaning from "appropriate" as used in dependent claims 12 and 13. eBay's argument is misplaced. Claims 12 and 13 place additional limitations on the independent claim on which they depend (claim 1) as is required by statute. *See* 35 U.S.C. § 112, ¶ 4 (2000) (a dependent claim must add a limitation to those recited in the independent claim). Even if "appropriate" in claims 12 and 13 is construed to mean "matching," the scope of the claims would still be different from claim 1. Claim 12 discloses a system where the client software adds a qualifier to the string query and claim 13 covers a system where the server stores statistics and provides a history of queries and corresponding responses. "Claim differentiation, while often argued to be controlling when it does not apply, is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two

13

1  claims." *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc*., 239 F.3d 1225, 1233 (Fed. Cir.
2  2001). This is simply not the case here.
3       eBay's reliance on *Kara Technology, Inc. v. Stamps.com Inc*., 582 F.3d 1341 (Fed.
4  Cir. 2009) is misplaced. In *Kara Technology*, the Federal Circuit found that the district court
5  erred in its construction of the term "security indicia" by limiting it to "created under control
6  of a key." *Id*. at 1346. The court observed that "[d]ifferences among claims can ... be a
7  useful guide in understanding the meaning of particular claim terms," *id*. at 1347 (quoting
8  *Phillips v. AWH Corp*., 415 F.3d 1303, 1314 (Fed. Cir. 2005)), and found that where "the
9  inventor wanted to restrict the claims to require the use of a key, he did so explicitly." *Id*. In
10 particular, a dependent claim explicitly added a limitation to the independent claim at issue
11 of the security indicia being validated by "a key." *Id.* Thus, *Kara Technology, Inc.* presents
12 the classic claim differentiation situation. *See Seachange Int'l Inc.*, 413 F.3d at 1369.
13     **3.**    **MasterObjects' Extrinsic Evidence**
14      MasterObjects suggests that the Court should look to extrinsic evidence which
15 demonstrates that the term "increasingly relevant" is not indefinite. In particular,
16 MasterObjects points to 1) a patent application filed by Google in 2009 wherein Google
17 described an auto-complete method as displaying "increasingly relevant suggestions," (Dkt.
18 No. 62-14, 1:21-24); 2) a Yahoo! patent that described iterative search (a term which
19 MasterObjects uses synonymously with "increasingly matching" searching) as "locat[ing]
20 increasingly relevant result based upon user query;" (Dkt. No. 62-15, 1:26-30); and 3) a
21 technical article describing how Google tweaked its' search algorithm to "provide
22 increasingly relevant search results while combatting spam." (Dkt. No. 62-16, p. 4.)
23 Although courts may look to extrinsic evidence, this is generally limited to "evidence
24 external to the patent and prosecution history, including expert and inventor testimony,
25 dictionaries, and learned treatises," and the extrinsic evidence is "less significant than the
26 intrinsic record in determining the legally operative meaning of claim language." *Phillips*,
27 415 F.3d at 1317 (internal citations and quotations omitted).
28

The Court declines to consider this extrinsic evidence. That similar language in other patents have apparently not been challenged is not relevant to this Court's construction of the terms at issue.

### B. The Claims at Issue are not Indefinite

The definiteness inquiry "focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification." *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001). "If the meaning of the claim is discernible, even though the [claim construction] task may be formidable and the conclusion may be one over which reasonable persons will disagree ... the claim [ ]is sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Research & Eng'g Co.*, 265 F.3d at 1375. Only those claims that are "not amenable to construction," or that are "insolubly ambiguous," are indefinite. *Datamize LLC*, 417 F.3d at 1347. Courts must "accord respect to the statutory presumption of patent validity, and [] protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." *Exxon*, 265 F.3d at 1375 (internal citations omitted). Although reasonable persons may disagree as to whether "appropriate" or "relevant" means the same as "matching," such a construction is plausible. eBay does not contend that the use of the term "matching" violates section 112. Accordingly, eBay has not established as a matter of law that claims 1 and 13 of the '639 Patent and claims 44 and 45 of the '529 Patent are indefinite.

### CONCLUSION

For the reasons explained above, the Court DENIES eBay's motion for partial summary judgment (Dkt. No. 57).

**IT IS SO ORDERED.**

Dated: August 12, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE